UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MANY MIGUEL DE LUNA VASQUEZ,
*individually and on behalf of others similarly*                    CASE NO: 1:17-cv-9627-RWL
*situated,*

               Plaintiff,

      -against-

2945 MEAT & PRODUCE (d/b/a Super
Foodtown of Throggsneck), and JOSEPH
BIVONA,

              Defendants.
--------------------------------------------------------X

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT
### (with incorporated memorandum of law)

     Plaintiff, MANY MIGUEL DE LUNA VASQUEZ ("Named Plaintiff"), and Defendants,

2945 MEAT & PRODUCE (d/b/a Super Foodtown of Throggsneck), and JOSEPH BIVONA

("Defendants")(Plaintiffs and Defendants are collectively referred to herein as the "Parties"),

hereby file their Joint Motion for Preliminary Approval of Class Action Settlement, as follows:

### Introduction

     Subject to this Court's approval, this claim, alleging unpaid overtime, which was brought

pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), has

been settled for the aggregate amount of Two Hundred and Thirty-Five Thousand Seven Hundred

and Ninety-Four Dollars and Eight Cents ($235,794.08), as more specifically set forth below.  The

proposed settlement resolves the claims of the Named Plaintiff, as well as the claims of all

similarly-situated putative class members (as defined herein), against Defendants, 2945 Meat &

Produce d/b/a Super Foodtown of Throggsneck and Joseph Bivona (Named Plaintiff and Defendants may be referred to collectively herein as the "Parties").

The Parties jointly request that this Court preliminarily approve their proposed settlement. Attached to the Declaration of Nolan Klein, Esq., filed concomitantly herewith, is the executed Stipulation of Settlement (Exhibit "A"), Proposed Notice of Class Action Settlement and Fairness Hearing (Exhibit "B"), Proposed Opt-Out Form (Exhibit "C"), and Proposed Order Granting Preliminary Approval of Class Action Settlement (Exhibit "D").

As discussed more fully below, because the proposed settlement is fair, reasonable, and adequate, and otherwise satisfies the requirements of Fed. R. of Civ. P. 23(b)(3), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the Court should preliminarily approve it.

## I.      NATURE OF THE CASE AND CLAIMS

On December 7, 2017, Named Plaintiff filed this action against Defendants, asserting FLSA and NYLL claims for unpaid overtime, and other NYLL statutory damages, on behalf of himself and all those similarly-situated. Defendants are a grocery store and its owner, and Named Plaintiff worked for Defendants in the meat department from on or around July 13, 2017 until on or about November 10, 2017. The time-period relevant to the Class Members in this case extends back six years from the date of filing, to December 7, 2011.

Plaintiff's counsel interviewed and obtained information from Plaintiff to assess his daily work schedule and wages received.  The Parties exchanged information. Plaintiff's counsel analyzed the damages that Plaintiff and potential Class Members might recover; most importantly, the likelihood that the number of potential class members in this case would ever get anything at

all unless a class action settlement was concluded in this case. After discussion of records provided by Defendant, and damages, with Defendants' counsel, the Parties understood the issues which might be raised during trial and engaged in extensive negotiations over a significant period of time. The Parties have agreed to settle the matter on a class-wide basis, including claims of the putative class (none of whom have ever previously raised any claims on their own) and the claims of the Named Plaintiff, for the total amount of $235,794.08, in the form of a reversionary fund, which includes attorneys' fees (addressed below), expenses, service awards, and administrator costs. Plaintiff's counsel is satisfied that this agreement is fair and reasonable based on the merits of the action, and the fact that no member of this class has ever otherwise raised any claim on his/her own, and this settlement will therefore present an opportunity for every person who worked for the subject business during the relevant time period to get something for overtime hours that may have been worked by such person.

The settlement is not an admission of liability on the part of the Defendants. Defendants continue to deny all claims and allegations of wrongdoing asserted in this case and believe they have substantial factual and legal defenses available to them on all claims alleged by the Named Plaintiff. Nonetheless, Defendants have concluded that any further continuation of this litigation would be expensive and lengthy, and that it would be desirable if this matter were fully and finally settled and resolved in the manner set forth by the Stipulation of Settlement.

## II.      SUMMARY OF PROPOSED SETTLEMENT TERMS

### a. The Class

The Proposed Settlement provides for certification of a Class of individuals defined as follows:

**All persons employed by Defendants at Super Food Town of Throggs Neck from December 7, 2011 through the Preliminary Approval Order.**

Excluded from the Class are the Defendants, members of the immediate family of each of the Defendants that are not corporate entities, any person who was or is an executive, officer, employee, director, and/or member of any of the Defendant corporations and/or companies during the relevant time period, any person, firm, trust, corporation, company, officer, director, member, or other individual or entity in which any Defendant has a controlling interest or which is affiliated with any of the Defendants, and the legal representatives, affiliates, agents, heirs, successors in interest, or assigns of any such excluded party.

This is an "opt-out" class; as such, also excluded from the Class are those Persons who timely and validly request exclusion from the Class. The proposed Claim form is attached to the Declaration of Nolan Klein as Exhibit "C," and sets forth the manner by which one may opt-out of the settlement. As such, the Proposed Settlement does not bind any member of the proposed Class who deems the settlement to be unfair, or who for any reason desires to bring his or her own claim arising out of the facts alleged by Named Plaintiff in this case.

### b. Compensation to the Class

For those proposed members of the Class who do not opt-out of this settlement, the Proposed Settlement provides the following relief to each such proposed Class member: Each Class Member shall be entitled to a portion of the Net Settlement Fund.[1] To calculate each Class Member's share of the Net Settlement Fund, Class Members shall receive a point for every week that they worked during the relevant time period. Each Class Member's point value will be divided

---

[1] All funds paid by Defendants, and held by the Administrator, within the Qualified Settlement Fund ("QSF) less amounts paid to Class Counsel as attorney's fees.

by the aggregate number of points accrued by the Class as a whole, to determine that specific Class Member's percentage of the Net Settlement Amount, which will then be multiplied by the Net Settlement Amount, to determine his or her amount.[2]

Defendants agree to initially fund this settlement with a $75,000.00 deposit into the Qualified Settlement Fund ("QSF") established for purposes of this settlement, and to subsequently deposit two additional sums of $80,397.04 as necessary, to cover the Settlement Payments to the Participating Claimants.

All unclaimed funds and stale checks that have not been cashed by Class Members within 200 days of the date the Administrator issues the checks, as well as all unclaimed funds in general, will revert to the Defendants, except that the unclaimed funds will be used for payment of Class Counsel's Litigation Costs (not fees) and the Administrator's expenses. All other monetary terms of the settlement, including the tax treatment of each payment, are extensively laid out in the Settlement Stipulation, which is attached to the Declaration of Nolan Klein, as Exhibit "A."

Defendants agree that: (1) Plaintiffs' Counsel's out-of-pocket litigation expenses spent litigating this case; and (2) the Administrator's fees and costs shall, be paid out of any unclaimed funds, and therefore not be included in calculating the Net Settlement Amount (if there are no unclaimed funds, these expenses shall be paid by Defendants directly). This will create a larger fund available to the Class Members who choose to participate and claim a payment. Defendants also agree to pay employer-side payroll taxes separately from the settlement fund.

### c.  Class Settlement Procedure

Consistent with Federal Rule of Civil Procedure 23(e), the Parties have agreed to the following procedure for settlement approval of the class action claims:

---

[2] This formula can accurately be represented as follows: (number of weeks worked) ÷ (weeks works by all Class Members) x (Net Settlement Amount) = individual payout.

(1)    Entry of the Preliminary Approval Order following submission to the Court of the instant Motion, including the setting by this Court of a date certain for a Fairness Hearing.

(2)    Within thirty (30) days after the date of the Preliminary Approval Order, Defendants will fund an initial payment of $75,000.00 into the QSF;

(3)    Within thirty (30) days of the entry of the Preliminary Approval Order, the Administrator will mail to all Class Members, via First Class United States Mail, postage-paid, the Court-approved Notice of Class Action Settlement. Attached to the Notice of Settlement will be the Claim Form, with instructions for those Class Members who wish to claim money, or opt-out and be excluded from settlement, object to the class settlement, and appropriately warn Class Members of the consequences if they choose to do nothing;

(4)    Class Members will then have sixty (60) days after the date the Notice of Settlement is mailed to object to the proposed settlement, or to opt-out by returning an Opt-out Statement;

(5)    Plaintiff will file a Motion for Final Approval of Settlement, and Motion for Award of Attorney's Fees, upon expiration of the opt-out period, and no later than fifteen (15) days before the Fairness Hearing;

(6)    Within 100 days after the Preliminary Approval Order, Defendants shall fund a payment of $80,397.04, as necessary, to cover all of the Settlement Payments to the Participating Claimants;

(7)    The Fairness Hearing will take place, at which Class Members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy,

and reasonableness of the settlement may be presented, as well as Class Counsel's Motion for Award of Attorney's Fees;

(8)     The Effective Date shall be the date on which all of the following events and conditions have been met or have occurred: (i) the Court has entered a Final Approval Order following the Fairness Hearing; and (ii) the Appeal Period has expired;

(9)     Within 200 days after the Preliminary Approval Order, or ten days after the Final Approval Order (whichever is earlier in time), Defendants shall fund a third and final payment of $80,397.04 into the QSF, if necessary, to pay the Settlement Payments to Participating Claimants;

(10)    The Administrator shall, within ten (10) calendar days after the Effective Date, distribute applicable attorney's fees to Class Counsel, and begin its distribution of funds in the QSF by mailing checks, to all qualifying members of the Settlement Class;

(11)    Participating Claimants will have 200 days from the date that the checks are mailed to cash their checks. If a Participating Claimant notifies Class Counsel or the Administrator that he or she believes the check has been lost or stolen, the Administrator will re-issue the check, and the Participating Claimant will have an additional thirty days to negotiate the replacement check. After all deposits into the QSR, payment of attorney's fees to Class Counsel, and distribution to Class Members, any unused or unclaimed funds will first be distributed to Class Counsel to pay out of pocket litigation expenses, and then distributed to Administrator itself

for any unpaid Administration expenses, and then, to the extent that any funds remain in the Settlement Fund, distributed back to Defendants.[3]

As discussed more fully below, the Parties believe that this settlement offers a fair and reasonable resolution of the claims at issue. Further, all Parties believe that the settlement incorporates and recognizes the substantial risks that each side faces, whether through class certification motions, summary judgment motions, at trial, and on appeal, had the litigation continued. Accordingly, the Parties ask that the Court preliminarily approve their settlement and grant the other relief requested herein.

### III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

#### a. Legal Standard for Preliminary Approval

Federal Rule of Civil Procedure 23(a) requires judicial approval for any compromise of claims brought on a class basis. *See* Fed. R. Civ. P. 23(e).  More specifically, the Court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Furthermore, court approval of a settlement agreement is required for any settlements involving claims under the FLSA sought to be dismissed pursuant to Rule 41. *Cheeks*, 796 F.3d at 199.  The decision whether to approve a class settlement is left within the sound discretion of the district court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995).

In the Second Circuit, settlement of class action lawsuits is strongly favored. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and alterations omitted); *Azogue v. 16 for 8 Hosp. LLC*, 2016 U.S. Dist. LEXIS 111134, at *7 (S.D.N.Y. Aug. 19, 2016) (granting preliminary approval of FLSA settlement and noting the

---

[3] Defendants have the ultimate responsibility to ensure that the Administrator is paid in full.

"strong judicial policy in favor of settlement of class action suits") (internal quotation marks and alterations omitted); *DeLeon v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 65261, at *6 (S.D.N.Y. May 7, 2015) (same); *Clem v. KeyBank, N.A.*, 2014 U.S. Dist. LEXIS 87174, at *10 (S.D.N.Y. June 20, 2014) (same). Deference should be given to the private consensual decision of the parties bearing in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ." *Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *6 (E.D.N.Y. Feb. 18, 2011).

Rule 23(e) establishes a "two-step process" for approval of settlements. First, the Court must determine whether the proposed class action settlement deserves preliminary approval. Then, following preliminary approval and notice to the class, the Court must determine whether final approval is appropriate. At the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *See* Manual for Complex Litigation (FOURTH) § 13.14, at 172-73 (2004). A proposed settlement agreement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations and is sufficiently fair, reasonable, and adequate to justify the sending of the Notices and setting the date for a fairness hearing." *Landin v. UBS Servs. USA, LLC*, 2012 U.S. Dist. LEXIS 19957, at *3 (S.D.N.Y. Feb. 14, 2012). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation (FOURTH) § 30.42 (1995)); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, at *7 (E.D.N.Y. Oct. 4, 2012) (same). Indeed, the court generally

"gives weight to the parties' judgment that the settlement is fair and reasonable." *Palacio v. E*TRADE Fin. Corp.*, 2012 U.S. Dist. LEXIS 88019, at *8 (S.D.N.Y. June 22, 2012) (collecting cases).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties. *Clark v. Ecolab, Inc.*, 2009 U.S. Dist. LEXIS 108736, at *14-15 (S.D.N.Y. Nov. 17, 2009) (citing *Newberg on Class Actions §* 11.25 (4th Ed. 2002)).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

In determining whether a settlement is fair, reasonable and adequate, courts in this Circuit look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.,* 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335.  The *Wolinsky* factors examine: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is

the product of arm's-length bargaining between experienced counsel; and (5) possibility of fraud or collusion.  Because the *Grinnell* factors subsume the *Wolinsky* factors, this motion only discusses *Grinnell. See Gay v. Tri-Wire Eng'g Sols., Inc.,* 2014 U.S. Dist. LEXIS 232, at *30-31 (E.D.N.Y. Jan. 2, 2014) ("The standard for approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns . . . [c]ourts approve FLSA settlements when they are reached as a 'result of contested litigation to resolve *bona fide* disputes' and when the 'proposed settlement reflects a reasonable compromise over contested issues . . . ") (quoting *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)).

**b.  The *Grinnell* factors applicable at this preliminary approval stage, which include the factors used to assess FLSA settlements, weigh in favor of the proposed settlement here.**

### i.    Complexity, Expense, and Likely Duration of the Litigation

The issues in this wage and hour case, while not necessarily legally complex, have been contested factually, resulting in time and expense to the Parties and their counsel.  Specifically, the Parties contest the hours that Named Plaintiff alleges that he worked, and whether grocery store employees worked more than forty hours in a given workweek.  By reaching a favorable settlement before extensive motion practice or trial, Plaintiff seeks to avoid additional expenses and delay and minimize risk, and instead ensure recovery for the Settlement Class. *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *3-4 (E.D.N.Y. Sep. 19, 2013) (approving FLSA settlement and noting that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation"). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems

associated with them." *Padro v. Astrue*, 2013 U.S. Dist. LEXIS 150494, at *14 (E.D.N.Y. Oct. 17, 2013).

Although the Parties have already undertaken time and expense in litigating this matter, further litigation without settlement would lead to not only additional expenses but also delay. Such expense and delay would be disproportionate to any likely recovery, much less the fair and reasonable result accomplished by the $235,794.08 settlement here, in which a broad Class of people who are unlikely to have otherwise made claims at all, will be entitled to a recovery. Barring a settlement, the Parties expect to take depositions, and engage in extensive motion practice. To establish liability and damages, a complicated and lengthy trial would be necessary, featuring extensive testimony by Defendants' representatives, Plaintiffs, and numerous Class Members. Preparing and presenting testimonial and documentary evidence at trial would consume both time and resources. Substantial judicial resources would also be required. The duration of the instant litigation and Class Member recovery could be extended if the judgment were appealed; however, this Settlement negates all these concerns, as monetary relief is available to Class Members in a prompt and efficient manner.

Moreover, the broader NYLL Class, combined with the FLSA Class, will bring the greatest possible finality to this litigation. The Parties agree that this expanded class definition is essential to resolving this matter. Courts within this Circuit have preliminarily approved similarly structured settlements comprising an FLSA class and a state law Rule 23 Class. *See, e.g., Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *50 (S.D.N.Y. Sep. 22, 2015); *Rosario v. Valentine Ave. Disc. Store, Co.*, 2013 U.S. Dist. LEXIS 77183, at *37 (E.D.N.Y. May 31, 2013).

Furthermore, although without a doubt, a settlement agreement in which the unclaimed funds remained with the class would result in more money being paid to individual class members,

it is unlikely that Defendants would have settled for the amount obtained in this settlement without a reversionary provision. *See* Newberg on Class Actions § 12:29 (5th ed.) ("[A] defendant is more likely to settle if the unclaimed funds revert to it."); *Hart*, 2015 U.S. Dist. LEXIS 126934, at *35 (approving a reversionary class settlement on the basis that the "payout is substantial, horizontally equitable among the class, and likely to be experienced as 'found money.'"). Here, by including the reversionary provision, the Defendants agreed to a larger overall settlement amount, which means that each Class Member who claims money will receive more than he/she would have otherwise without the reversionary clause and with a lower total amount. Plaintiff is also concerned whether protracted litigation may result in nothing more than an unenforceable judgment. The sheer number of possible Class members give rise to very real questions about whether final adjudication without amicable settlement would result in a judgment amount rendered merely theoretical by Plaintiffs' inability to collect it. The sum of $235,794.08 was agreed to be a fair and reasonable compromise, and the Parties now seek the Court's approval of this amount.

### ii.    Stage of Proceedings and Amount of Discovery Completed

Although preparing this case for trial would require many hundreds of additional hours of work for both sides, the Parties have exchanged information and Plaintiffs' counsel is able to recommend settlement at this juncture. "The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Willix*, 2011 U.S. Dist. LEXIS 21102, at *11.  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Sierra v. Spring Scaffolding LLC*, 2015 U.S. Dist. LEXIS 178006, at *15 (E.D.N.Y. Sep. 30, 2015).

Here, the information exchanged was sufficiently adversarial and part of an effort to learn the relevant facts and circumstances in an efficient and cost-effective manner and exceeds the required standard.  Defendants' counsel provided data, and shared this information with Plaintiff's counsel, to exhibit the difficulty in obtaining a superior resolution than the one currently at hand, should the litigation proceed.  Based on these considerations, the Parties were eventually able to compromise on an acceptable amount.  As a result of this process, the third *Grinnell* factor weighs in favor of settlement.

### iii.      The Risks of Establishing Liability and Damages

"In assessing the settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continued risks of litigation." *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *17 (S.D.N.Y. June 7, 2011).  Courts recognize that "[l]itigation inherently involves risks." *Id.* at *18; *Willix*, 2011 U.S. Dist. LEXIS 21102, at *11.  The risk taken "to prove the amount and extent of overtime that [Plaintiff] worked through testimony because Defendants did not keep accurate records of their hours" must be given consideration. *Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at *11 (E.D.N.Y. Nov. 16, 2012).

Trying this matter would expose both sides to significant risks with respect to both liability and damages.  In weighing the risks of establishing liability and damages, the Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000).  A trial on the merits would involve significant risks to Plaintiffs.  Not only because of the fact-intensive nature of measuring damages under the FLSA and NYLL, but also with regards to the credibility contest required when determining the measure of damages. Despite the belief that Plaintiff's

FLSA and NYLL claims are meritorious, Plaintiff's counsel is experienced and mindful of the inherent uncertainty of what lies ahead (in any litigation), if a settlement is not reached.

To settle the matter, the Parties addressed the potential damages based upon assumed liability, the difficulty that proving liability would entail, and the potential inability for Defendants to withstand a greater judgment, even if Plaintiffs were to ultimately succeed on the merits. Because of the inherent uncertainty, the Parties believe the compromise here to be fair and reasonable, and thus the fourth and fifth factors weigh heavily in favor of approval.

As it relates to the Class, "[a] contested class certification motion would likely require extensive discovery and briefing." *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at *18 (E.D.N.Y. Jan. 20, 2010). Even if the Court granted a contested class certification motion, Defendants could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to decertify, which would require additional rounds of briefing. Crucially, "[s]ettlement eliminates the risk, expense, and delay inherent in this process." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *17 (S.D.N.Y. Jan. 28, 2014).

In the event that this case is not settled, Plaintiffs would have to move for class certification pursuant to Rule 23 and Defendants would oppose. Even if granted, after months of class discovery, Defendants would likely move for decertification of the Rule 23 Class or seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). All of which would require not only extensive briefing but additional time. Such an undertaking is rife with risk, expense, and delay. If, after years of additional litigation, Plaintiff is successful in obtaining damages for all Class Members, this would be a pyrrhic victory, inasmuch as Defendants are not likely able to satisfy such a judgment. As such, the fourth, fifth, and sixth factors favor preliminary approval.

       iv.    **The Settlement Fund is Substantial Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation, the "Ability of**

**Defendants to Withstand a Greater Judgment," and the "Range of Reasonableness of the Proposed Settlement" Factors Support Approval of the Proposed Settlement.**

### a. Defendants' ability to withstand greater judgment

Even if the Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Flores*, 2014 U.S. Dist. LEXIS 11026, at *17. Defendants counsel has expressed credible and specific concern over Defendants' inability to withstand a judgment any larger than this settlement amount. This factor weighs strongly in favor of approval.

### b. Range of Reasonableness

"The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. 2003). "In fact, settlement can be approved even when it amounts to only a small percentage of the recovery sought." *Id.*; *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses"). Moreover, "settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,' settlement is reasonable under this factor." *Massiah*, 2012 U.S. Dist. LEXIS 166383, at *13.

### IV. CERTIFICATION UNDER RULE 23 IS WARRANTED

For purposes of settlement only, the Parties agree that this class meets all of the requirements for Rule 23 class certification. *See* Newburg, § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). Both the

Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089-90 (6th Cir. 2016); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). Here, for settlement purposes only, the parties submit that the elements of Rule 23 are met with respect to the proposed settlement, which accordingly, warrants settlement class certification.

For a lawsuit to be maintained as a class action under Federal Rule of Civil Procedure 23, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). As discussed further below, all such factors are satisfied here for settlement purposes.

### 1.    Numerosity

The numerosity requirement is met when the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(l). In this Circuit, "no magic minimum number establishes numerosity." *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 504 (S.D.N.Y. 2011) (citation omitted). In determining numerosity, "the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013). However, "the Second Circuit has noted that 'numerosity is presumed at a level of 40 members.'"

*Karic v. Major Automotive Co., Inc.*, 2016 WL 1745037, at *10 (E.D.N.Y. Apr. 27, 2016).  Here, numerosity is satisfied as the class is comprised of more than 200 individuals.

### 2.    Commonality

The proposed class also satisfies the commonality requirement pursuant to Rule 23(a)(2), which testes "whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Commonality is satisfied when "[p]laintiffs and class members bring nearly identical claims arising from Defendants' alleged uniform violations of the FLSA and NYLL." *Chhab v. Darden Rests., Inc.*, 2016 U.S. Dist. LEXIS 67629, at *56 (S.D.N.Y. May 19, 2016). This case involves identical issues of fact and law involving alleged unpaid overtime pay arising out of employment by the same employers, at the same location. This is sufficient to establish commonality for purposes of a Rule 23 settlement.

### 3.    Typicality

Under Rule 23(a)(3), the Parties also agree that typicality has been met for purposes of settlement.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37.  Typicality is "'usually met irrespective of varying fact patterns which underlie individual claims' so long as the claims of the class representative are typical of the Class Members' claims." *Chhab*, 2016 U.S. Dist. LEXIS 67629, at *57 (quoting *Karic v. The Major Auto. Companies, Inc.*, 2016 U.S. Dist. LEXIS 8777

(E.D.N.Y. Jan. 26, 2016)).    Here, the claims of Plaintiffs and the Class Members arise from the same alleged pay practice of requiring employees to work more than forty hours per week but not paying them for those hours.  Accordingly, the typicality requirement has been met.

### 4.    Adequacy of Class Representatives

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class."  Adequacy requires "the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Named Plaintiff has vigorously pursued the interests of the Class, and for purposes of settlement, the interests of Plaintiffs and the Class are aligned.  Indeed, Named Plaintiff is the only person who has voluntarily come forward with respect to the FLSA and NYLL claims alleged against Defendants in this case, and also chose to pursue this case as a class action, for the benefit of others. Named Plaintiff is an adequate class representative.

### 5.    Rule 23(a)'s "Implied" Ascertainability Requirement

Although not expressly stated in Rule 23(a), "courts have added an implied requirement of ascertainability with respect to the class definition." *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 125 (S.D.N.Y. 2014).  Courts require that "a class be identifiable before it may be properly certified." *Id.*  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012). Here, the class is easily identifiable, as Defendants will produce a list with more than 200 employees who worked for them during the relevant period.

### 6.  Certification under Rule 23(b)(3) Has Been Met

The two requirements of 23(b)(3), namely superiority and predominance, are also met here. Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is a superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, common questions predominate because "the issues in the class action . . . are subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (*overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006)).  Indeed, all Class Members are unified by common factual allegations that they were employed in the same job and were paid in the same manner during the same periods of time.  As a result, predominance is satisfied.

Morover, class certification is a superior method to resolve this action compared to individual actions. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  No individual Class Member has brought or reasonably will bring an individual action, and there is a strong desirability to efficiently concentrate the claims in this single forum. *See* Fed. R. Civ. P. 23(b)(3).  It is also reasonable to infer that Class Members might lack sufficient resources to bring individual actions for what would be a relatively limited recovery.  Concentrating the litigation in this forum is also desirable because the majority of the putative Class Members are located in New York, where the alleged wrongful conduct occurred.  The requirements of Rule 23(b)(3) have been met because a class action is superior to other available methods for a fair adjudication of the controversy.

## V.    PLAINITFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Plaintiffs' counsel, Nolan Klein, Esq., and Law Offices of Nolan Klein, P.A., is qualified and experienced such that they are able to conduct this litigation. Mr. Klein litigates commercial matters at the trial court and appellate levels and has litigated hundreds of federal cases, including approximately 75 FLSA cases. He has taught four CLE courses on how to represent clients in federal court (all approved for CLE credit in New York) which have been viewed by thousands of lawyers. Mr. Klein has appeared as a legal expert on national news media including Fox News, CNN, and 60 Minutes, and has previously been named class counsel in a class involving approximately 80,000 class members, and in that matter, carried out his responsibilities without any issue.[4] Plaintiff's counsel most respectfully submit that in light of this background, as well as a review of papers and memoranda filed in this case, reveal counsel to be qualified, experienced, and generally able to conduct the proposed litigation. It is respectfully submitted that Rule 23(a)(4) has been met.

## VI.    THE PROPOSED FORM OF NOTICE IS APPROPRIATE

The content of the Proposed Notice, attached to the Declaration of Nolan Klein, fully complies with the requirements of Rule 23.  Pursuant to Rule 23(c)(2)(B), the notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must be concise and in plain language, and set forth the claims, terms of settlement, method to object or be excluded, and the binding effect of the settlement. Here, the proposed Notice meets these requirements by providing specific and clear information to the Class, in plain language that is easy to understand, and sets forth the terms therein.  The proposed Notice also clearly informs Class Members how to return and submit

---

[4] *Penney, et. al. vs. Waiora, LLC, et., Southern District of Florida, Case No. 12-80064.*

valid claim forms in order to participate in the settlement, how to object or opt-out, and further adequately informs Class Members of the effects of the settlement, whether they choose to file a claim form, do nothing, opt-out, or object to the settlement.  As a result, because this Notice fully complies with the requirements under Rule 23, the Court should approve it accordingly.

## VII.    A HEARING ON FINAL APPROVAL OF THE CLASS SETTLEMENT SHOULD BE SCHEDULED

Following preliminary approval of the class settlement, and service of the Notice on all members of the proposed Class, a Fairness Hearing must be held on the proposed settlement. Manual for Complex Litigation, §21.633; *see also, e.g.,* Sharper Image Corp., 517 F.Supp. 2d 1292 ("In the second step, after notice to the class and an opportunity for absent settlement class members to object or otherwise be heard, the court will determine whether to grant final approval of the settlement as fair and reasonable under Federal Rule of Civil Procedure 23").

Accordingly, the Parties respectfully request that the Court schedule a Fairness Hearing for final approval of the Stipulation of Settlement, to be held between 90 and 120 days after entry of the proposed Preliminary Approval Order; it is respectfully requested that the Fairness Hearing be calendared within the Preliminary Approval Order, so the date and time can be disclosed to the proposed class within the Notice to be sent to all proposed class members.

## VIII.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the Preliminary Approval Order attached here, thereby: (1) granting preliminary approval of the settlement described herein; (2) certifying the Class under Fed. R. Civ. P. 23(a); (3) appointing Named Plaintiff as Class Representatives; (4) appointing Nolan Klein, Esq. and Law Office of Nolan Klein as class counsel; (5) approving the proposed Claim Form, and Notice of Pendency of Class Action Settlement Form, attached to the Declaration of Nolan Klein; (6) approving the

Parties' proposed schedule for final settlement approval and scheduling a fairness hearing; (7)

appointing as the Administrator as the claims administrator; and (8) entering all such further

relief as is deemed just and equitable under the circumstances.

DATED this 5th Day of February, 2019.

**Respectfully Submitted,**

LAW OFFICES OF NOLAN KLEIN
*Attorneys for Plaintiff*
39 Broadway, Ste. 2250
New York, NY 10006
PH: (646) 560-3230


By: _/s/ Nolan Klein_
NOLAN KLEIN, ESQUIRE
klein@nklegal.com

HARFENIST KRAUT & PERLSTEIN LLP
*Attorneys for Defendants*
3000 Marcus Avenue, Suite 2E1
Lake Success, New York 11042
Telephone: (516) 355-9630


By: _/s/ Steven Harfenist_
STEVEN HARFENIST, ESQ.
sharfenist@hkplaw.com