UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
MANY MIGUEL DE LUNA VASQUEZ,
*individually and on behalf of others similarly
situated,*

       Plaintiffs,                           CASE NO.: 1:17-cv-09627-RWL

v.

2945 MEAT & PRODUCE (d/b/a Super
Foodtown of Throggsneck), and JOSEPH
BIVONA,

       Defendants.
---------------------------------------------------------x

## UNOPPOSED MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND APPROVAL OF CLASS ACTION SETTLEMENT
### (with incorporated memorandum of law)

       Plaintiff, MANY MIGUEL DE LUNA VASQUEZ ("Named Plaintiff"), files the following

Unopposed Motion for Final Certification of Settlement Class, and for Approval of Class Action

Settlement (the "Motion for Final Approval"), as follows:

## I.    Introduction

       It is respectfully submitted that the terms of settlement that were preliminarily approved

by this Court on March 20, 2019 (the "Preliminary Approval Order"), satisfy all criteria for final

approval. Plaintiff requests entry of a final order (a) certifying the settlement class (as described

herein); (b) approving as fair and adequate class-wide settlement of this case on the terms set forth

within the settlement agreement of the parties [D.E. 40-1] (the "Settlement Agreement" or

"Stipulation of Settlement"); and (c) approving the FLSA Settlement (as to Named Plaintiff and

all opt-in plaintiffs). This Court previously granted preliminary approval to the settlement and class

certification in this case, and ordered that notice be mailed to all members of the settlement class.

*D.E. 41*. As set forth herein, all members of the class have been notified of the terms of the

settlement, as well as their right to opt-out of, or object to, the settlement. As discussed more fully below, the settlement reached in this case is fair, reasonable, and adequate, and otherwise satisfies the requirements of Fed. R. of Civ. P. 23(b)(3), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), and *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332 (S.D.N.Y. 2012). The Court is respectfully requested to grant final approval.

## II.    **Background**

On December 7, 2017, Named Plaintiff filed this action against Defendants, asserting FLSA and NYLL claims for unpaid overtime, and other NYLL statutory damages, on behalf of himself and all those similarly-situated. Defendants are a grocery store and its owner, and Named Plaintiff worked for Defendants in the meat department from on or around July 13, 2017, until on or about November 10, 2017. The time-period relevant to the Class Members in this case extends back six years from the date of filing, to December 7, 2011. Plaintiff's counsel interviewed and obtained information from Plaintiff to assess his daily work schedule and wages received. Moreover, during the litigation, Plaintiff received and reviewed documentation from Defendants, including data on members of the class, and financial information for the corporate Defendant. Plaintiff's counsel analyzed the damages that Plaintiff and potential Class Members could recover, and the likelihood that the number of potential class members in this case would ever get anything at all absent amicable class-wise resolution (particularly since no one had ever made any claim).

Counsel for the parties engaged in extensive discussions. The Parties understood the issues which might be raised during trial and engaged in negotiations. The Parties ultimately agreed to settle the matter on a class-wide basis, including claims of the putative class (none of whom have ever previously raised any claims on their own) and the claims of the Named Plaintiff, for the total

amount of $235,794.08 in the form of a reversionary fund, including attorneys' fees, expenses, service awards, and administrator costs.[1] *See D.E. 40-1.* Plaintiff's counsel was satisfied that this agreement is fair and reasonable based on the merits of the action, and the fact that no member of this class has ever otherwise raised any claim on his/her own, and this settlement will therefore present an opportunity for every person who worked for the subject business during the relevant time period to get something for overtime hours that may have been worked by such person; moreover, anyone who does not wish to participate may opt-out, and FLSA claims (but not NYLL claims) remain intact for those who do not opt-in. The parties jointly presented and discussed terms of settlement with this Court during a settlement conference, and then filed a joint motion to preliminarily approve the settlement terms. The Court preliminarily approved the settlement and preliminarily certified the settlement class on March 20, 2019. *D.E. 41.*

The settlement was not an admission of liability on the part of Defendants, who continue to deny all claims and allegations of wrongdoing asserted in this case and believe they have substantial factual and legal defenses available to them on all claims alleged by the Named Plaintiff. Nonetheless, Defendants concluded that any further continuation of this litigation would be expensive and lengthy, and that it would be desirable if this matter were fully and finally settled and resolved in the manner set forth by the Stipulation of Settlement. D.E. 40-1.

III.    **Summary of Settlement Terms**

a.    **Class Definition**

The preliminarily-approved class-wide settlement provides for certification of classes of individuals defined as follows:

> Under Fed. R. Civ. P. 23(a) and (b)(3), all persons employed by
> Defendants from December 7, 2011 through March 20, 2019, and

---

[1] An unopposed motion to approve award of attorney's fees, service award, and administrator costs, has been filed on even date herewith.

may be owed overtime wages for all hours worked over forty and statutory damages (the "New York Class"); and

Under 29 U.S.C. §216(b), all persons who worked for Defendants at any time from December 7, 2015 through March 20, 2019, and who may be owed overtime wages for hours worked over forty and statutory damages (the "Federal Class").

*D.E. 40, ¶3* (New York Class and Federal Class are referred to collectively as the "Class").

This is an "opt-out" class; as such, excluded from the Class are those persons who timely and validly request exclusion from the Class.

### b. **Class Compensation**

For those proposed members of the Class who have not opted out of this settlement, the settlement provides the following relief to each such Class member: Each Class Member is entitled to a portion of the Net Settlement Fund.[2] To calculate each Class Member's share of the Net Settlement Fund, Class Members shall receive a point for every week that they worked during the relevant time period. Each Class Member's point value will be divided by the aggregate number of points accrued by the Class as a whole, to determine a specific Class Member's percentage of the Net Settlement Amount, which will then be multiplied by the Net Settlement Amount, to determine his or her amount.

Defendants agreed to initially make a $75,000.00 deposit into the Qualified Settlement Fund ("QSF") established for purposes of this settlement, and to subsequently deposit two additional sums of $80,397.04, as necessary, to cover settlement payments to the participating claimants.[3] All unclaimed funds and stale checks that have not been cashed by Class Members within

---

[2] The Net Settlement Fund is comprised of all funds paid by Defendants, and held by the Administrator, within the Qualified Settlement Fund ("QSF"), less amounts paid to Class Counsel as attorney's fees.

[3] The initial deposit was sent by Defendants to the Claims Administrator on April 19, 2019, and is currently in the possession of the Claims Administrator.

200 days after the date the Administrator issues the checks, as well as all unclaimed funds in general, will revert to the Defendants, except that the unclaimed funds will be used for payment of Class Counsel's Litigation Costs (not fees) and the Administrator's expenses. All other monetary terms of the settlement, including the tax treatment of each payment, are extensively laid out in the Stipulation of Settlement, which is docketed at D.E. 40-1.

The parties have agreed that: (1) Plaintiffs' Counsel's out-of-pocket litigation expenses spent litigating this case; and (2) the Administrator's fees and costs shall be paid out of any unclaimed funds, and therefore not be included in calculating the Net Settlement Amount (if there are no unclaimed funds, these expenses shall be paid by Defendants directly). This will create a larger fund available to the Class Members who choose to participate and claim a payment. Defendants have also agreed to pay employer-side payroll taxes separately from the settlement fund. *D.E. 40-1.*

### c.  Attorneys' Fees, Litigation Costs and Service Award

Class Counsel has filed an Unopposed Motion to Approve Attorney's Fees, Administrative Fees, and Service Award on even date herewith.

### d.  Claims Administration

Arden Claims Services, LLC ("Arden"), a third-party claims administrator, which was appointed by this Court to administer the claims. *D.E. 41, ¶7.* On March 28, 2019, Arden received the Court-approved Notice from Class Counsel. *See Affidavit of Angela Ferrante, attached hereto as Exhibit "A."* The Notice advised Class Members of the calculation formula to determine payments, of their right to participate in the Settlement, to opt-out from the Settlement, or object to the Settlement, and the implications of each such action. *Exhibit "A" at Paragraph 4.* The Class Notice advised Class Members of applicable deadlines and other events

including the date and location of the Fairness Hearing, and how Class Members could obtain additional information. *Exhibit "A" at Paragraph 4; see also Exhibit "A" at Exhibit 1.* On April 1, 2019, counsel provided ACS with a list containing the name, and if available, last known mailing address of each of the Class Members. The list initially contained data for 298 Class Members. *Exhibit "A" at Paragraph 5.* After checking for duplicates, there were 295 Class Members. *Exhibit "A" at Paragraph 5.*

The mailing addresses were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *Exhibit "A" at Paragraph 6.* The NCOA contains changes of address information filed with the U.S. Postal Service. *Exhibit "A" at Paragraph 6.* If any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice. *Exhibit "A" at Paragraph 6.* On April 11, 2019, the Notice was mailed via First Class Mail to 291 Class Members for whom addresses were available, notifying them that their deadline to submit a claim form, opt-out of, or object to the Settlement was June 10, 2019.[4] *Exhibit "A" at Paragraph 7.* On May 10, 2019, a postcard reminder was mailed via First Class Mail to 234 Class Members contained in the list who had not already submitted Claim Forms. *Exhibit "A" at Paragraph 8.*

Arden received fifty-eight (58) Notices back as undeliverable. *Exhibit "A" at Paragraph 9.* Seven of the Notices were returned by the USPS as undeliverable but with a forwarding address, and these were re-mailed to the forwarding address received. *Exhibit "A" at Paragraph 8.* Fifty-one (51) Notices were returned without a forwarding address. *Exhibit "A" at Paragraph 8.* There were fourteen (14) postcards returned as undelivered. *Exhibit "A" at Paragraph 8.* Arden performed an advanced address search on these addresses by using LocatePLUS, a reputable

---

[4] There were three (3) class members for whom no address information was available or ascertainable. *Exhibit "A" at FN 1.*

research tool. *Exhibit "A" at Paragraph 8.* Arden used the Class Member's name, previous address, and social security number, if one was available, to attempt to obtain a current address. *Exhibit "A" at Paragraph 8.* Through the fifty-nine (59) advanced address searches performed, ACS was able to locate forty-eight (48) updated addresses and ACS promptly mailed Notices to Class Members to those updated addresses. *Exhibit "A" at Paragraph 9.* ACS emailed two (2) Class Members upon their request. *Exhibit "A" at Paragraph 9.* Accordingly, ACS was able to re-mail a total of fifty-four (54) Notices. *Exhibit "A" at Paragraph 9.* Of those, only four (4) were returned undelivered a second time, and four (4) were mailed a third time. *Exhibit "A" at Paragraph 8.*

Ultimately, the number of Class Members who received Notices from the initial mailing, was 277 out of the original class list of 292. *Exhibit "A" at Paragraph 10.* There were fifteen Notices in all that were never delivered to the intended class members despite remailing when the envelope was returned with a forwarding address, through the advanced address search, or class member provided addresses, for a total undeliverable rate of 5.14%. *Exhibit "A" at Paragraph 10.* There are sixty-five (65) Class Members who filed claims for a total of 66 participating Class Members (including the Named Plaintiff). *Exhibit "A" at Paragraph 10.*

As of June 4, 2019, Arden has received three (3) requests for exclusion from the settlement (opt-outs), and no objections. *Exhibit "A" at Paragraph 11-12.* Arden has performed all necessary calculations and stands ready to deliver checks to Class Members who have opted-in after final approval of the settlement. *Exhibit "A" at Paragraph 14-15.*

IV.    **Memorandum of Law**

    **A. The Class meets the legal standard for certification**

When presented with a class action settlement, courts first examine whether the settlement class may be certified. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006). On March 20, 2019, this Court preliminarily certified the settlement class. *D.E. 41*. It is respectfully submitted that the Court should grant final certification because all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") are present. Moreover, for purposes of settlement, the Parties agree that the Class meets all of the requirements for Rule 23 class certification. *See* Newburg, § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."). Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089-90 (6th Cir. 2016); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Under Rule 23, a class action may be maintained if all prongs of Rule 23(a) are met, as well as one prong of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). All of the requirements are met in this case.

    **1. Numerosity**

The numerosity requirement is met when the class is "so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(l). In this Circuit, "no magic minimum number

establishes numerosity." *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 504 (S.D.N.Y. 2011) (citation omitted). In determining numerosity, "the relevant considerations a court may consider include: (1) judicial economy arising from the avoidance of multiplicity of actions; (2) geographic dispersion of class members; (3) financial resources of class members; (4) the ability of claimants to institute individual suits; and (5) requests for prospective injunctive relief which would involve future class members." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 383 (E.D.N.Y. 2013). However, "the Second Circuit has noted that 'numerosity is presumed at a level of 40 members.'" *Karic v. Major Automotive Co., Inc.*, 2016 WL 1745037, at *10 (E.D.N.Y. Apr. 27, 2016). Here, numerosity is satisfied as the Class is comprised of 295 individuals. As such, numerosity is present.

### 2. Commonality

The proposed class also satisfies the commonality requirement pursuant to Rule 23(a)(2), which testes "whether the named plaintiff's claim and the class claims are so intertwined that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Commonality is satisfied when "[p]laintiffs and class members bring nearly identical claims arising from Defendants' alleged uniform violations of the FLSA and NYLL." *Chhab v. Darden Rests., Inc.*, 2016 U.S. Dist. LEXIS 67629, at *56 (S.D.N.Y. May 19, 2016). This case involves identical issues of fact and law involving alleged unpaid overtime pay arising out of employment by the same employers, at the same location. This is sufficient to establish commonality for purposes of a Rule 23 settlement.

### 3. Typicality

Under Rule 23(a)(3), the Parties also agree that typicality has been met for purposes of settlement. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."

*Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux*, 987 F.2d at 936-37. Typicality is "'usually met irrespective of varying fact patterns which underlie individual claims' so long as the claims of the class representative are typical of the Class Members' claims." *Chhab*, 2016 U.S. Dist. LEXIS 67629, at *57 (quoting *Karic v. The Major Auto. Companies, Inc.*, 2016 U.S. Dist. LEXIS 8777 (E.D.N.Y. Jan. 26, 2016)). Here, the claims of Plaintiffs and the Class arise from the same alleged pay practice of requiring employees to work more than forty hours per week but not paying them for those hours. Accordingly, the typicality requirement has been met.

### 4. Adequacy of Class Representatives

Rule 23(a)(4) requires that "the representative part[y] will fairly and adequately protect the interests of the class." Adequacy requires "the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Here, Named Plaintiff has pursued the interests of the Class, the interests of Plaintiffs and the Class are not at odds. Named Plaintiff is the only person who has voluntarily come forward with respect to the FLSA and NYLL claims alleged against Defendants in this case, and also chose to pursue this case as a class action for the benefit of others. Named Plaintiff is an adequate class representative.

### 5. Rule 23(a)'s *Implied* Ascertainability Requirement

Although not expressly stated in Rule 23(a), "courts have added an implied requirement of ascertainability with respect to the class definition." *Schear v. Food Scope Am., Inc.*, 297 F.R.D.

114, 125 (S.D.N.Y. 2014). Courts require that "a class be identifiable before it may be properly certified." *Id*. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Stinson v. City of New York*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012). Here, the class is easily identifiable, as Defendants have provided Arden with a list specifically identifying 295 employees who worked for Defendants during the relevant period and who comprise the Class in this case.

### 6.    Certification requirements under Rule 23(b)(3) have been met

The two requirements of Rule 23(b)(3), namely superiority and predominance, are also met in this case. Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Here, common questions predominate because "the issues in the class action . . . are subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) (*overruled on other grounds by In re IPO*, 471 F.3d 24 (2d Cir. 2006)). Indeed, all Class Members are unified by common factual allegations that they were employed by the same employers and were paid in the same manner during the same periods of time. As a result, predominance is satisfied.

Morover, class certification is a superior method to resolve this action compared to individual actions. *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). No individual member of the Class

has brought or is reasonably anticipated to bring an individual action, and there is a strong desirability to efficiently concentrate the claims in this single forum. *See* Fed. R. Civ. P. 23(b)(3). It is also reasonable to infer that the Class might lack sufficient resources to bring individual actions for what would be a relatively limited recovery. Concentrating the litigation in this forum is also desirable because the majority of the putative Class Members are located in New York, where the alleged wrongful conduct occurred. The requirements of Rule 23(b)(3) have been met because a class action is superior to other available methods for a fair adjudication of the controversy.

**B. The proposed settlement is fair, reasonable, and adequate and should be approved in all respects.**

In determining whether a settlement is fair, reasonable and adequate, courts in this Circuit look to the nine "*Grinnell* factors," which are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell Corp.,* 495 F.2d at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In evaluating a proposed settlement of FLSA claims, courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335. The *Wolinsky* factors examine: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) possibility of fraud

or collusion. Because the *Grinnell* factors subsume the *Wolinsky* factors, this motion only discusses *Grinnell. See Gay v. Tri-Wire Eng'g Sols., Inc.,* 2014 U.S. Dist. LEXIS 232, at *30-31 (E.D.N.Y. Jan. 2, 2014) ("The standard for approving a FLSA settlement is lower than for a Rule 23 settlement because the former does not implicate the same due process concerns . . . [c]ourts approve FLSA settlements when they are reached as a 'result of contested litigation to resolve *bona fide* disputes' and when the 'proposed settlement reflects a reasonable compromise over contested issues . . .'") (quoting *Khait*, 2010 U.S. Dist. LEXIS 4067, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)).

> **i.    The *Grinnell* factors, which include the factors used to assess FLSA settlements, weigh in favor of the settlement in this case.**

> > **a.    Litigation Through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1).**

The issues in this wage and hour case, while not necessarily legally complex, have been contested factually, resulting in time and expense to the parties and their counsel. Specifically, the parties contest the hours that Named Plaintiff alleges that he worked, and whether grocery store employees worked more than forty hours in a given workweek. By reaching a favorable settlement before extensive motion practice or trial, Named Plaintiff seeks to avoid additional expenses and delay and minimize risk, and instead ensure recovery for the Settlement Class. *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 U.S. Dist. LEXIS 134207, at *3-4 (E.D.N.Y. Sep. 19, 2013) (approving FLSA settlement and noting that "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation"). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Padro v. Astrue*, 2013 U.S. Dist. LEXIS 150494, at *14 (E.D.N.Y. Oct. 17, 2013).

Although the Parties have already undertaken time and expense in litigating this matter, further litigation without settlement would lead to not only additional expenses but also delay. Such expense and delay would be disproportionate to any likely recovery, much less the fair and reasonable result accomplished by the $235,794.08 settlement here, in which a broad Class of people who are unlikely to have otherwise made claims at all, will be entitled to a recovery. Barring final approval of this settlement, the parties expect to take depositions, and engage in extensive motion practice. To establish liability and damages, a complicated and lengthy trial would be necessary, featuring extensive testimony by Defendants' representatives, Plaintiffs, and numerous members of the Class. Preparing and presenting testimonial and documentary evidence at trial would consume both time and resources. Substantial judicial resources would also be required. The duration of the instant litigation and Class recovery could be extended if the judgment were appealed; however, this settlement negates all these concerns, as monetary relief is available to Class Members in a prompt and efficient manner.

Moreover, the broader NYLL Class, combined with the FLSA Class, will bring the greatest possible finality to this litigation. The Parties agree that this expanded class definition is essential to resolving this matter. Courts within this Circuit have preliminarily approved similarly structured settlements comprising an FLSA class and a state law Rule 23 Class. *See, e.g., Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *50 (S.D.N.Y. Sep. 22, 2015); *Rosario v. Valentine Ave. Disc. Store, Co.*, 2013 U.S. Dist. LEXIS 77183, at *37 (E.D.N.Y. May 31, 2013). Furthermore, although without a doubt, a settlement agreement in which the unclaimed funds remained with the Class would result in more money being paid to individual class members, it is unlikely that Defendants would have settled for the amount obtained in this settlement without a reversionary provision. *See* Newberg on Class Actions § 12:29 (5th ed.) ("[A] defendant is more likely to settle if

the unclaimed funds revert to it."); *Hart*, 2015 U.S. Dist. LEXIS 126934, at *35 (approving a reversionary class settlement on the basis that the "payout is substantial, horizontally equitable among the class, and likely to be experienced as 'found money.'"). Here, by including the reversionary provision, the Defendants agreed to a larger overall settlement amount, which means that each Class Member who claims money will receive more than he/she would have otherwise without the reversionary clause and with a lower total amount. Plaintiff is also concerned whether protracted litigation may result in nothing more than an unenforceable judgment. The sheer number of possible Class members give rise to very real questions about whether final adjudication without amicable settlement would result in a judgment amount rendered merely theoretical by Plaintiffs' inability to collect it. The sum of $235,794.08 was agreed to be a fair and reasonable compromise, and the Parties now seek the Court's approval of this amount.

### b.  The reaction of the Class (*Grinnell* Factor 2).

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94 Civ. 5587. 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, Arden, under common mailed the Court-approved Notice of the class action and settlement to the Class Members. The Notice explicitly informed class members of their rights and the procedures to participate in the settlement. As of June 4, 2019, there have been no objections to the settlement. Moreover, out of 295 members of the Class, only 3 have opted out, and those 3 individuals are, of course, not bound by the settlement. Moreover, none of the non-responding Class Members are bound by settlement of the FLSA component of this case. Class Counsel believe that the proposed settlement is fair

because, *inter alia*, only a very small number of individuals have chosen to exclude themselves, and no individual has thus far made any objection. *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate.").

### c.  Stage of Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3).

Although preparing this case for trial would require many hundreds of additional hours of work for both sides, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Willix*, 2011 U.S. Dist. LEXIS 21102, at *11. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Sierra v. Spring Scaffolding LLC*, 2015 U.S. Dist. LEXIS 178006, at *15 (E.D.N.Y. Sep. 30, 2015). Here, the information exchanged was sufficiently adversarial and part of an effort to learn the relevant facts and circumstances in an efficient and cost-effective manner and meets the required standard. Defendants' counsel provided data, and shared this information with Plaintiff's counsel, to exhibit the difficulty in obtaining a superior resolution than the one currently at hand, should the litigation proceed. Based on these considerations, the Parties were eventually able to compromise on an acceptable amount. As a result of this process, the third *Grinnell* factor weighs in favor of settlement.

### d.  The risks of establishing liability and damages (*Grinnell* Factors 4-5).

"In assessing the settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continued risks of litigation." *Castagna v. Madison Square Garden, L.P.*, 2011 U.S. Dist. LEXIS 64218, at *17

(S.D.N.Y. June 7, 2011). Courts recognize that "[l]itigation inherently involves risks." *Id*. at \*18; *Willix*, 2011 U.S. Dist. LEXIS 21102, at \*11. The risk taken "to prove the amount and extent of overtime that [Plaintiff] worked through testimony because Defendants did not keep accurate records of their hours" must be given consideration. *Massiah v. MetroPlus Health Plan, Inc.*, 2012 U.S. Dist. LEXIS 166383, at \*11 (E.D.N.Y. Nov. 16, 2012). Trying this matter would expose both sides to significant risks with respect to both liability and damages. In weighing the risks of establishing liability and damages, the Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000). A trial on the merits would involve significant risks to Plaintiffs. Not only because of the fact-intensive nature of measuring damages under the FLSA and NYLL, but also with regards to the credibility contest required when determining the measure of damages. Despite the belief that Plaintiff's FLSA and NYLL claims are meritorious, Plaintiff's counsel is experienced and mindful of the inherent uncertainty of what lies ahead (in any litigation), if settlement is not reached.

To settle the matter, the Parties addressed the potential damages based upon assumed liability, the difficulty that proving liability would entail, and the potential inability for Defendants to withstand a greater judgment, even if Plaintiffs were to ultimately succeed on the merits. Because of the inherent uncertainty, the Parties believe the compromise here to be fair and reasonable, and thus the fourth and fifth factors weigh heavily in favor of approval.

As it relates to the Class, "[a] contested class certification motion would likely require extensive discovery and briefing." *Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, at \*18 (E.D.N.Y. Jan. 20, 2010). Even if the Court granted a contested class certification motion, Defendants could seek to file a Federal Rule of Civil Procedure 23(f) appeal and/or move to

decertify, which would require additional rounds of briefing. Crucially, "[s]ettlement eliminates the risk, expense, and delay inherent in this process." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, at *17 (S.D.N.Y. Jan. 28, 2014). In the event that this case is not settled, Plaintiffs would have to move for class certification pursuant to Rule 23 and Defendants would oppose. Even if granted, after months of class discovery, Defendants would likely move for decertification of the Rule 23 Class or seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f). All of which would require not only extensive briefing, but additional time. Such an undertaking is rife with risk, expense, and delay. If, after years of additional litigation, Plaintiff is successful in obtaining damages for all Class Members, this would be a pyrrhic victory, inasmuch as Defendants may likely not be able to satisfy such a judgment. As such, the fourth, fifth, and sixth factors favor preliminary approval.

### e. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6).

Even where preliminary class status is granted, the risk of maintaining that class certification through trial is also present, particularly in light of the recent caselaw. Further, because not all members of the proposed settlement class worked for Defendant in the same capacity, or on the basis of the same rates of pay, and had other differentiating factors that may be seized upon by a Defendant seeking to decertify a class, there is legal uncertainty as to whether Defendants may argue on a decertification motion that individual questions preclude class certification. Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor also favors final approval.

### f. Defendants' Ability to Withstand a Greater Judgment is in Doubt (*Grinnell* Factor 7).

Collection on a judgment is a significant risk. It is not uncommon to obtain judgment after a full trial, which is uncollectible. Moreover, Defendant has shared tax returns which cause concern regarding its ability to satisfy a large judgment. However, even if Defendants could withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 (alterations and citation omitted)). Here, settlement eliminates the risk of collection. The settlement has already been partially funded and is being held by Arden. In respect of the individual Defendants, their liability will be predicated on proving their actual day to day involvement with the business, which is highly risky.

### g. The Settlement Fund Is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

The $235,794.08 settlement amount represents a good value given the attendant risks of litigation and the collection risks discussed above, even though the recovery could be greater if Plaintiff succeeded on all claims at trial and survived an appeal. Each class member who returns a Claim Form and does not opt-out of the settlement will receive a payment. While Plaintiff believes that he could ultimately establish Defendants' liability, to do so would require significant factual development, an extended period of litigation, and could result in no recovery at all.

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the

settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). Moreover, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008), (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)).

### C.  The Proposed Settlement Is Procedurally Fair.

#### 1.  The Settlement Was the Result of Arm's Length Negotiation

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007);

*see In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties, including a settlement conference at which the contemplated settlement was discussed with the Court. Class Counsel spent significant effort to achieve the settlement. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and the propriety of class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed documentation including personnel records and financial documents.

After almost a year of litigation, months of litigation and negotiations, at a settlement conference before this Court, the parties reached and executed a detailed final settlement agreement. At all times during the settlement process, the parties negotiated on an arm's-length basis. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *deMunecas*, 2010 WL 3322580, at *4.

### 2. The Distribution of Class Notice Satisfied Due Process

As set forth above, the class notification process was thorough and successful. While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *In re Merrill Lynch Tyco Research Securities Litigation*, 249 F.R.D. 124 (2008), citing *Wal–Mart,* 396 F.3d at 113–14. Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to

inform potential class members. *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir.1988); *In re Prudential Securities, Inc.,* 164 F.R.D. 362, 368 (S.D.N.Y 1996) (finding due process does not require that every class member receive actual notice if reasonable means chosen that are likely to inform persons affected); *Parker v. Time Warner Entertainment Company*, 239 F.R.D. 318 (E.D.N.Y. 2007) (Rule 23 does not require that Plaintiffs' counsel give actual individual notice to each member of the class); *Trist v. First Federal Savings & Loan Ass'n,* 89 F.R.D. 1, 3 (E.D.Pa.1980) (finding non-systematic failure in mailing not problematic).

Rule 23(c)(2) requires the best notice practicable, not perfect notice. The word 'practicable' implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first class mail would in most cases be the 'best notice practicable.' *Id*. In certain circumstances, the Courts have held that notice by publication is the best notice practicable. *In re MetLife Demutualization Litigation*, 262 F.R.D. 205 (E.D.N.Y. 2009). The Courts have consistently concluded that the parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested third parties and the provision of publication notice meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.,* 87 N.Y.2d 566, 570-71, 663 N.E.2d 886, 888, 640 N.Y.S.2d 845, 847 (1996) (mailing notice fulfilled due process-actual notice unnecessary).

Due process does not require actual receipt of the individual notice by each and every possible class member. *See In re Colt Indus.,* 155 A.D.2d at 157, 160, 553 N.Y.S.2d at 140, 142 (approving notice by publication in two newspapers); *see also Weigner v. City of New York,* 852

F.2d 646, 649 (2d Cir.1988) (holding "all risk of non-receipt" need not be eliminated), *cert. denied* 488 U.S. 1005 (1989); *Agent Orange,* 818 F.2d at 168; *Silber v. Mabon,* 18 F.3d 1449, 1451 (9th Cir.1994) (holding class member bound by judgment although notice not received before opt-out date); *Peters v. National R.R. Passenger Corp.,* 966 F.2d 1483, 1486-87 (D.C.Cir.1992)(notice not received because of incomplete address).

In the instant action, the Court should find that Class Members were provided with adequate notice of the settlement. The notification process was described in detail above, and was fair, reasonable, and adequate, by every measure possible.

### D.  Approval of the FLSA Settlement Is Appropriate Under Federal Law.

Plaintiff also requests that the Court approve the settlement of his FLSA claims, as well as those of the Federal Class who have specifically opted-in. He has brought his FLSA claims as a collective action. Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001). Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also Diaz*, 2010 WL 5507912, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator

of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7. In this case, the settlement was the result of litigation and arm's-length negotiation involving vigorous back and forth, as well as a Court settlement conference. During the litigation, counsel highly experienced in wage and hour law represented Plaintiff and Defendants.

## V.    Conclusion

Plaintiff respectfully requests that this Court enter an Order (a) certifying the settlement Class; (b) granting final approval to the Settlement Agreement; (c) approving the FLSA settlement as to Plaintiff and members of the Class who have opted-in; and (d) re-affirming the procedure set forth within the Preliminary Approval Order [D.E. 41]; specifically:

1. Within 100 days of the Preliminary Approval Order, or by June 28, 2019, Defendants shall fund an additional payment of $80,397.04, to the QSF;

2. Within ten (10) days after the Final Approval Order (the Order sought herein), Defendants shall fund a third and final payment of $80,397.04 into the QSF;

3. The Effective Date shall be the date on which the appeal period applicable to the Final Approval Order has expired;

4. The Administrator, Arden, shall, within ten (10) calendar days after the Effective Date, distribute applicable attorney's fees to Class Counsel, and begin its distribution of funds in the QSF by mailing checks, to all qualifying members of the Settlement Class;

5. Participating Claimants will have 200 days from the date that the checks are mailed to cash their checks. If a Participating Claimant notifies the Arden that he or she believes the check has been lost or stolen, Arden will re-issue the check, and the Participating Claimant will have an additional thirty

days to negotiate the replacement check. After all deposits into the QSR, payment of attorney's fees to Class Counsel, and distribution to Class Members, any unused or unclaimed funds will first be distributed to Class Counsel to pay out of pocket litigation expenses, and then distributed to Arden itself for any unpaid administration expenses, and then, to the extent that any funds remain in the Settlement Fund, distributed back to Defendants;

6.  Entering such further relief as this Court may deem just and appropriate under the circumstances presented.

DATED this 5th Day of June, 2019.

**Respectfully Submitted,**

LAW OFFICES OF NOLAN KLEIN
*Attorneys for Plaintiff*
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
PH: (954) 745-0588

By: */s/ Nolan Klein*
NOLAN KLEIN, ESQUIRE
klein@nklegal.com
amy@nklegal.com